UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM W. WHITTEN, III,<br><br>                     Plaintiff,<br><br>           v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                     Defendant. | Case No. C12-5213-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

William W. Whitten, III, seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications.  He contends that the ALJ erred by (1) improperly evaluating the medical evidence; (2) erroneously discounting the credibility of Mr. Whitten and a lay witness; and (3) failing to meet the Commissioner's burden at step five of the sequential evaluation process.  Dkt. 19 at 2.  As discussed below, the Court recommends the Commissioner's decision should be **AFFIRMED** and the case be **DISMISSED** with prejudice.

### I.     FACTUAL AND PROCEDURAL HISTORY

William W. Whitten, III, is currently 52 years old, has completed the tenth grade, and has worked as a truck driver, storage manager, security guard, laborer, cashier, and bartender.[1]  On

---

[1] Tr. 51-52, 138, 186.

REPORT AND RECOMMENDATION - 1

August 12, 2009, he applied for benefits, alleging disability as of July 31, 2006. Tr. 138-51. His applications were denied initially and on reconsideration. Tr. 71-78. The ALJ conducted a hearing on July 22, 2011, finding Mr. Whitten not disabled. Tr. 17-48. As the Appeals Council denied Mr. Whitten's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## II.   THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, [2] the ALJ made the following findings:

**Step one:** Mr. Whitten has not engaged in substantial gainful activity since April 25, 2008.

**Step two:** Mr. Whitten has the following severe impairments: bipolar disorder and posttraumatic stress disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Mr. Whitten had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he can perform simple, repetitive tasks and well-learned more complex tasks. Mr. Whitten can interact with known co-workers and supervisors but cannot work directly with the general public.

**Step four:** Mr. Whitten cannot perform his past work.

**Step five:** As Mr. Whitten can perform a number of jobs that exist in significant numbers in the national economy, he is not disabled.

Tr. 17-48.

## III.   DISCUSSION

**A.   The ALJ Did Not Err in Discounting Mr. Whitten's Credibility.**

The ALJ explained why he discounted Mr. Whitten's subjective testimony regarding the

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

severity of his symptoms:

> The claimant's allegations must be considered in connection with the objective medical evidence, which fails to provide strong support for the extent of the symptoms and limitations alleged and is more consistent with the residual functional capacity set forth above.
>
> Despite his allegations of debilitating mental health impairments, the claimant has not received significant treatment. As noted above, the claimant's primary care physicians have prescribed various medications over the years that resulted in good control of his symptoms ([Tr. 259-84]). Records as of the amended alleged onset date also document improvement and unremarkable mental status examination findings, and fail to reflect the extent of the symptoms and limitations alleged. For example, during the April 2008 evaluation, Mr. Kohlmeyer noted the claimant's report that medications including Celexa and doxepin were "great" and "working" for him. The claimant was alert and responsive with no apparent memory deficits. The claimant's mood was calm, alert, and responsive, and his affect was appropriate. Mr. Kohlmeyer noted no signs of agitation, anxiety, or depression. He stated that the claimant's thought processes appeared logical and coherent, and his attention and concentration appeared within normal range. The claimant was fully oriented with intact memory ([Tr. 285-97]). Mr. Kohlmeyer's report does not corroborate the claimant's allegations or document any significant symptoms or limitations.
>
> The record thereafter documents a significant gap in treatment, as the next time the claimant was evaluated was a year later in April 2009, when Dr. Wheeler noted that he was not receiving any mental health treatment. The fact that the claimant went without treatment for an extended period of time suggests that his condition was not as severe as alleged. In addition, despite his lack of treament or medications, mental status examination findings were relatively unremarkable, as he was alert and fully oriented, but his mood was dysphoric and anxious. . .
>
> Subsequent records document continued improvement and unremarkable findings. . . .
>
> It is also significant that treating providers have noted minimal symptoms or limitations. . . . Dr. Miller's records, as well as those of all the claimant's other treating physicians, show that his condition was well controlled with medications and fail to document any significant symptoms or limitations. . . .
>
> This medical evidence shows that the claimant's symptoms have been well controlled with medications, and even when the claimant has not received treatment, mental status examination findings have been consistently unremarkable. Treatment records repeatedly note medication efficacy and fail to document the extent of the symptoms or limitations alleged by the claimant. The inconsistencies evident between the claimant's allegations and the medical

REPORT AND RECOMMENDATION - 3

records render his reports less credible.

In addition to the lack of corroborating medical evidence, there are other reasons to discount the extent of the claimant's allegations. Although he has alleged symptoms and limitations so severe that they render him unable to perform any work activity, the record documents activities that suggest greater functioning than alleged and that are consistent with work-related activities. As noted above, the claimant has reported independently performing a variety of daily activities. For example, the claimant has reported no significant difficulties with self-care, money management, driving or chores. He said that he did a lot of house cleaning because his girlfriend was gone for half the week. The claimant reported activities including walking his dog twice a day, gardening, cutting firewood, riding his bicycle, reading, using the computer, going fishing, driving, and shopping. He has also reported spending 90 minutes a day taking care of many animals ([Tr. 285-306, 312-22, 329-34, 371-83, 397-403]). A Third Party Function Report in the record indicates that the claimant had no problems performing personal care, prepared simple meals two to three times a day, and did household chores including dishes, laundry, vacuuming, mowing the yard, dusting, and minor household repairs. It was noted that the claimant was able to drive and go out alone, shopped, and managed money ([Tr. 206-13]). The activities documented in the record establish greater functioning than alleged and are entirely consistent with an ability to perform simple, repetitive, and some complex tasks that do not require contact with the general public. The claimant's activities are not consistent with his allegations of debilitating mental health impairments and render his reports less credible.

Tr. 28-31 (internal footnotes omitted). Mr. Whitten argues that the ALJ erred in discounting his credibility based on a failure to seek treatment (and improvement when treatment resumed), and based on inconsistent daily activities, as Mr. Whitten contends that neither of these reasons are supported by the record.

The Court agrees that the ALJ improperly inferred that because Mr. Whitten did not seek mental-health treatment, he did not need such treatment. Instead, the record suggests that Mr. Whitten's lack of insurance and/or benefits assistance led to his gap in treatment, and that he had trouble trusting a therapist enough to seek treatment. *See, e.g.*, Tr. 276, 361, 367, 372. This behavior is not a valid reason to discount Mr. Whitten's credibility, because his lack of treatment does not reflect a lack of serious symptoms; it reflects the lack of available resources to obtain

REPORT AND RECOMMENDATION - 4

treatment and perhaps a lack of awareness that his "condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

But the ALJ provided two other clear and convincing reasons to discount Mr. Whitten's credibility: lack of corroboration in the medical record and daily activities inconsistent with Mr. Whitten's alleged functional impairments. As summarized by the ALJ in some detail, the record contained medical evidence showing that Mr. Whitten's functional impairments were not as severe as described by Mr. Whitten, given that he was found to have unremarkable or average mental status on multiple occasions. *See, e.g.*, Tr. 289, 302-03, 331-33, 368, 372, 395. The record also contains evidence showing that Mr. Whitten's depression and PTSD was amenable to treatment and improved with medication and therapy. *See, e.g.*, Tr. 260, 262-63, 265-66, 274, 288, 308, 376, 385. Though Mr. Whitten may emphasize other portions of the record over these sections, the ALJ was entitled to rely on the substantial evidence in the record showing Mr. Whitten to be less impaired than he described. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Mr. Whitten's daily activities also undermined his description of severe impairment. Though Mr. Whitten testified that he has a "hard time socializing or being social" (Tr. 55), he also reported that he walks his dog, goes shopping, and socializes with family and friends a couple of times a week (Tr. 53, 60, 331). He also enjoys communicating on two-way radios. Tr. 331. His roommate Diana Greenman reported that they watch television, clean the house, and "sometimes go fishing" together. Tr. 206. The ALJ did not err in finding these activities to be inconsistent with Mr. Whitten's descriptions of severe symptoms, and discounting his subjective

REPORT AND RECOMMENDATION - 5

testimony accordingly. *See Molina*, 674 F.3d at 1113 ("Even where [everyday] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (a claimant's daily activities undermine his or her credibility if they contradict the claimant's other testimony) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Because the ALJ provided clear and convincing reasons to discount Mr. Whitten's credibility, the ALJ did not err in finding him to be less than entirely credible.

**B.   The ALJ Did Not Err in Evaluating the Medical Evidence.**

The ALJ assigned "significant weight" to the state agency psychologist consultants who found Mr. Whitten capable of completing simple, repetitive tasks, and more complex tasks with time, though limited to working with known co-workers and supervisors (not the general public). *See* Tr. 351, 357. The ALJ gave less weight to the opinions of examining psychologists Drs. Kimberly Wheeler, Keith Krueger, and Tasmyn Bowes, and the opinion of treating mental-health counselor Erin Martinache, MSW, MHP. Tr. 33-36. Mr. Whitten contends that the ALJ erred in discounting the opinions of examining and treating providers in favor of state agency consultants.

**1.   Dr. Wheeler's Opinions**

The ALJ summarized the opinions of Dr. Wheeler as follows:

> I [] decline to give significant weight to the opinions expressed in Dr. Wheeler's DSHS evaluations. In the April 2009 DSHS evaluation, Dr. Wheeler assessed moderate limitations in the claimant's ability to understand, remember, and follow complex instructions and to perform routine tasks. These limitations are not consistent with the repeatedly unremarkable mental status examination findings or with the claimant's documented activities. In addition, the only support Dr. Wheeler provided was that the claimant was "easily distracted by internal rumination," which was entirely based on the claimant's subjective reports. As to

social functioning, Dr. Wheeler assessed marked limitations in the claimant's ability to relate appropriate in public contacts and to respond appropriately to and tolerate the pressures and expectations of a normal work setting.  These limitations also appear to have been based in large part on the claimant's subjective reports, as the support cited for the limitations includes the claimant's "intense fear" of the public and his lack of emotional resiliency, "particularly around confrontation."  While the record considered as a whole is consistent with some limitations in social functioning, the nature and degree of the limitations assessed by Dr. Wheeler are not consistent with the record and are given little weight.

In her July 2010 DSHS evaluation, Dr. Wheeler assessed moderate limitations in the claimant's ability to understand, remember, and follow complex instructions and to learn new tasks, stating that his attention was "irregular" and his concentration was "impaired," however, those statements are not entirely consistent with the mental status examination findings contained in Dr. Wheeler's reports or others found in the record and are therefore not given significant weight.  Dr. Wheeler assessed marked limitations in the claimant's ability to interact appropriately in public contacts, to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and to maintain appropriate behavior in a work setting ([Tr. 360-68]).  These limitations are not persuasive for several reasons.  First, they were based entirely on the claimant's subjective reports and presentation during the evaluation, which are not consistent with treatment records, discussed above, that were not reviewed by Dr. Wheeler.  Second, in a subsequent evaluation, Dr. Wheeler noted improvement, which also renders these limitations less reliable.

Finally, in the May 2011 DSHS evaluation, Dr. Wheeler assessed moderate limitations in the claimant's ability to learn new tasks, to perform routine tasks without undue supervision, and to be aware of normal hazards and take appropriate precautions.  Dr. Wheeler assessed marked limitations in the claimant's ability to communicate and perform effectively in a work setting with limited public contact and to maintain appropriate behavior in a work setting.  While I agree that limitations in social functioning, particularly regarding the public, are consistent with the record, I decline to give significant weight to the remainder of Dr. Wheeler's assessment.  Again, the limitations were based primarily on the claimant's subjective reports, as evidenced by Dr. Wheeler's reference to a direct quotation from the claimant.  In addition, the limitations assessed are not entirely consistent with the relatively unremarkable mental status examination findings noted by Dr. Wheeler, or the contemporaneous counseling records that also noted unremarkable mental status examination findings and fail to reflect the degree of symptoms the claimant reported to Dr. Wheeler.  For these reasons, Dr. Wheeler's assessment is not persuasive and is not given significant weight.

Tr. 34-35 (internal footnotes omitted).  Mr. Whitten contends that the ALJ's assessment of Dr.

REPORT AND RECOMMENDATION - 7

1  Wheeler's opinions is flawed for three reasons: (1) the ALJ erred in focusing on the results of
2  Mr. Whitten's mental status examinations rather than on the entirety of Dr. Wheeler's notes, (2)
3  the ALJ erred in finding that Mr. Whitten's reported daily activities contradicted Dr. Wheeler's
4  opinions, and (3) the ALJ erroneously assumed Dr. Wheeler's opinions were based entirely on
5  non-credible statements provided by Mr. Whitten.  Dkt. 19 at 6-9.
6         Regarding the ALJ's first reason for discounting Dr. Wheeler's opinions —
7  inconsistencies between her mental status examination notes and her opinions about Mr.
8  Whitten's functional abilities — the record supports the ALJ's finding.  For example, Dr.
9  Wheeler's April 2009 mental status examination notes indicate that Mr. Whitten had sufficient
10 memory to recall three out of three items immediately and after a delay, and that his attention
11 was "okay" unless he is recalling a past traumatic event.  Tr. 302.  Yet Dr. Wheeler found Mr.
12 Whitten moderately limited in his ability to understand, remember, and follow complex
13 instructions, and in his ability to perform routine tasks.  Tr. 300.  Likewise, Dr. Wheeler's July
14 2010 mental status examination notes indicate that Mr. Whitten had sufficient memory to recall
15 three out of three items immediately and after a delay, and that he was able to state his Social
16 Security number backward and spell "world" backward with some effort.  Tr. 368.  These
17 findings are inconsistent with Dr. Wheeler's opinion that Mr. Whitten had "impaired
18 concentration" and "irregular" attention, finding him moderately impaired in his ability to
19 understand, remember, and follow complex instructions and in his ability to learn new tasks.  Tr.
20 365.  Further, Dr. Wheeler's May 2011 mental status examination notes indicate that Mr.
21 Whitten's mental status was appropriate or within normal limits as to many criteria (Tr. 403),
22 even though Dr. Wheeler found him to have "marked" limitations in several functional
23 categories (Tr. 400).  It was not unreasonable for the ALJ to construe Dr. Wheeler's mental

REPORT AND RECOMMENDATION - 8

1  status examinations as inconsistent with her findings on Mr. Whitten's functional limitations in
2  this respect, and thus the Court should not disturb the ALJ's interpretation.  *Molina*, 674 F.3d at
3  1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must
4  uphold the ALJ's findings if they are supported by inferences reasonably drawn from the
5  record.").  This is a specific and legitimate reason supported by the record to discount Dr.
6  Wheeler's opinions regarding Mr. Whitten's social functioning.  *See Batson v. Comm'r of Social*
7  *Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (explaining that an ALJ must provide specific,
8  legitimate reasons to discount a physician's contradicted opinion).
9       The record also supports the ALJ's second reason for discounting Dr. Wheeler's
10 opinions: inconsistency with Mr. Whitten's daily activities.  Mr. Whitten reported that he was
11 able to take care of his own personal hygiene, dishwashing, house cleaning, laundry, and
12 personal finances.  Tr. 331.  Mr. Whitten walks his dog daily and uses two-way radios.  Tr. 315.
13 He also reported that he socializes with extended family and friends a couple of times each week.
14 Tr. 331.  His friend and roommate Diana Greenman reported that he gets along with people "one
15 on one," and that he is polite when her children come to visit.  Tr. 210-11.  Though the record
16 also contains evidence that Mr. Whitten struggled with social functioning, his self-reported
17 activities contradict Dr. Wheeler's findings that he suffers from debilitating social impairment,
18 and this is a specific and legitimate reason to discount Dr. Wheeler's opinions about Mr.
19 Whitten's social functioning.
20      Lastly, the ALJ discounted Dr. Wheeler's opinions to the extent that they were based on
21 Mr. Whitten's subjective complaints, which the ALJ found to be not credible (as explained
22 *supra*, Part III.A).  Mr. Whitten contends that because Dr. Wheeler did not disbelieve Mr.
23 Whitten's self-report, and because she supported her conclusions with her own observations, Mr.

REPORT AND RECOMMENDATION - 9

Whitten's lack of credibility is not a valid reason to discount Dr. Wheeler's opinions. *See* Dkt. 19 at 8-9 (citing *Ryan v. Comm'r of Social Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)). While it is true that Dr. Wheeler's examination notes give no indication that she disbelieved Mr. Whitten, her notes do not contain the type of independent observations described in *Ryan*. Instead, Dr. Wheeler's opinions are replete with Mr. Whitten's own words: she described Mr. Whitten as "intensely fearful" when indicating his "severe" limitation in his ability to interact appropriately in public contacts; she wrote that Mr. Whitten has "zero emotional resiliency, particularly around confrontation," when indicating his "severe" limitation in his ability to respond appropriately and tolerate the pressures of a normal work setting. Tr. 300. She also noted that Mr. Whitten "avoids people, doesn't trust anyone," when finding him to be markedly limited in his ability to communicate and work in a job with public contact. Tr. 400. She stated that Mr. Whitten would be "likely to express his paranoid world view, alienate others," to support finding him "markedly limited in his ability to maintain appropriate behavior at work. Tr. 400. Dr. Wheeler also described Mr. Whitten's hypomania and other symptoms in almost exclusively his own words, via quotes. Tr. 402. This reliance on Mr. Whitten's own words and his description of responses to circumstances not observed by Dr. Wheeler distinguishes this case from *Ryan* — particularly because Dr. Wheeler was not Mr. Whitten's treating psychologist. Thus, to the degree that Dr. Wheeler so relied on Mr. Whitten's subjective complaints, the ALJ did not err in discounting her opinions. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1229 (9th Cir. 2009) ("As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.").

Accordingly, because the ALJ provided specific and legitimate reasons to discount Dr.

REPORT AND RECOMMENDATION - 10

Wheeler's medical opinions, the ALJ did not err in assessing Dr. Wheeler's opinions.

**2.     Dr. Krueger's Opinions**

The ALJ summarized the opinions of Dr. Krueger as follows:

> In September 2009, Dr. Krueger assessed moderate limitations in the claimant's ability to understand, remember, and follow complex instructions and to exercise judgment and make decisions. As to social functioning, he assessed marked limitations in the claimant's ability to relate appropriately to co-workers and supervisors, to interact appropriately in public contacts, and to respond appropriately to and tolerate the pressures and expectations of a normal work setting ([Tr. 312-22]).  While Dr. Krueger's opinion is not inconsistent with the residual functional capacity for simple and some complex tasks that do not require public contact, it is not given significant weight because the record clearly shows that the claimant is able to engage in appropriate interpersonal interactions, as he did so with numerous treating and examining providers and has maintained friendships and family relations.  Therefore, the limitation regarding co-workers and supervisors is not consistent with the record.  In addition, the support provided by Dr. Kru[e]ger for the limitations assessed was that the claimant was "extremely fearful," anxious, insecure, and hypervigilant, symptoms that have not been consistently noted in the record; therefore indicating that Dr. Krueger relied heavily on the claimant's subjective reports, which are not entirely credible.

Tr. 33. Mr. Whitten does not identify any particular error in the ALJ's handling of Dr. Krueger's opinions, but argues that "[t]he ALJ rejected Dr. Krueger's opinion for the same faulty reasons he rejected Dr. Wheeler's opinions." Dkt. 19 at 14.

The Court disagrees.  The ALJ found that Dr. Krueger's opinion regarding Mr. Whitten's marked limitations in social functioning is inconsistent with Mr. Whitten's ability to interact appropriately with his medical providers and family and friends, and this finding is supported by substantial evidence in the record. *See* Tr. 211 (describing Mr. Whitten as "polite" to his roommate's children), 213 (Mr. Whitten's roommate describing him as "likable"), 262 (describing Mr. Whitten as "pleasant"), 265 (same), 266 (same), 331 (describing Mr. Whitten as "cooperative").  The ALJ also noted that some of Dr. Krueger's opinions were based on Mr. Whitten's self-report, and that Mr. Whitten's lack of credibility undermines those opinions.  Tr.

REPORT AND RECOMMENDATION - 11

33.  For the reasons explained *supra*, Part III.B.1, this is a valid basis to discount Dr. Krueger's opinions, to the degree that they were based solely on Mr. Whitten's self-report and not supported by Dr. Krueger's independent observation.  Accordingly, the ALJ did not err in assessing Dr. Krueger's opinions.

### 3. Dr. Bowes's Opinions

The ALJ summarized the opinions of Dr. Bowes as follows:

> Consultative examiner Dr. Bowes opined that in a work setting, the claimant was likely to become overwhelmed, distracted, and anxious by the demands and expectations that he function efficiently and with sufficient speed.  Dr. Bowes stated that the claimant's ability to relate to others, including fellow coworkers and supervisors, was slightly to moderately impaired due to some mistrust and paranoia.  She said that his ability to understand, remember, and follow instructions was only mildly impaired, and that he was capable of comprehending and completing simple to moderate routine activities of daily living at home.  Dr. Bowes opined that the claimant's mental ability to withstand the stress and pressures associated with day-to-day work activity was impaired but should improve significantly over the course of a year with appropriate treatment ([Tr. 329-34]).  I do not find Dr. Bowes' opinion persuasive given the repeatedly unremarkable mental status examination findings of record.  There is no support for the assumption that the claimant would "likely" decompensate in a work setting, particularly given his ability to persist during repeated psychological evaluations and his significant daily activities.  In addition, the record shows that the claimant experienced improvement with treatment, as evidenced by both counseling and primary care records.  Therefore, because Dr. Bowes' opinion is not adequately supported or consistent with the record as a whole, it is not given great weight.

Tr. 33-34.  Again, Mr. Whitten does not identify any particular error in the ALJ's assessment of Dr. Bowes's opinion, but he generally argues that "[t]he ALJ provided the same unsound reasons for rejecting Dr. Bowes' opinion that he provided for rejecting the opinions of Drs. Wheeler and Krueger."  Dkt. 19 at 15.

The Court again disagrees.  As with the rejection of the opinions of Drs. Wheeler and Krueger, the ALJ provided specific and legitimate reasons to discount Dr. Bowes's opinions.  Dr. Bowes's findings in the "mental status" section of her evaluation notes are not remarkable: she

REPORT AND RECOMMENDATION - 12

described him as cooperative, with "nothing remarkable" about his manner of speech.  Tr. 331-32.  Though his mood was "somewhat anxious," his affect was "appropriate and congruent."  Tr. 332.  His immediate memory was "retained," and his long-term memory was "within the average range."  Tr. 332.  His fund of knowledge was "in the adequate range," as was his ability to abstract.  Tr. 332.  His ability to complete arithmetic calculations was "retained for the moderate task range," and he was "alert and responsive."  Tr. 332.  Dr. Bowes also found Mr. Whitten to possess "judgment . . . sufficient to make life decisions, conduct his own living arrangements, and participate in a treatment program."  Tr. 332.  These findings, as well as other mental status examination findings, undermine Dr. Bowes's opinions regarding Mr. Whitten's ability to function in a work environment decompensating.  Thus, the ALJ did not err in discounting Dr. Bowes's opinion in that regard.

Furthermore, as expected by Dr. Bowes herself, Mr. Whitten's limitations improved with treatment.  *Compare* Tr. 333 (Dr. Bowes's opinion that "Mr. Whitten's mental ability to withstand the stress and pressures associated with day-to-day work activity is currently impaired, but should improve significantly over the course of the next year with appropriate treatment") *with* Tr. 389-396 (Mr. Whitten's therapy progress notes, indicating that his symptoms are improving over time).  The ALJ did not err in discounting Dr. Bowes's opinions on this basis.

Because the ALJ provided specific and legitimate reasons to discount Dr. Bowes's opinions regarding the severity of Mr. Whitten's functional impairments, the ALJ did not err in assessing Dr. Bowes's opinions.

**4.    Ms. Martinache's Opinions**

The ALJ summarized Ms. Martinache's opinions as follows:

> Erin Martinache, M.S.W., M.H.P., a counselor at Behavioral Health Resources, completed a "Medical Source Statement" form at the request of the claimant's

REPORT AND RECOMMENDATION - 13

>representative in June 2011.  Ms. Martinache checked boxes on the form indicating moderate limitations in the claimant's ability to remember locations and work-like procedures; to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being unduly distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to ask simple questions or request assistance; to accept instructions and to respond appropriately to criticism from supervisors; and to set realistic goals or to make plans independently of others.  Ms. Martinache also assessed marked limitations in the claimant's ability to interact appropriately with the general public and to respond appropriately to changes in the work setting ([Tr. 404-07]).  Although the generally moderate limitations are not entirely inconsistent with the residual functional capacity, Ms. Martinache's assessment is not persuasive or given significant weight for several reasons.  First, she provided absolutely no narrative explanation or support for any of the limitations assessed.  Second, the limitations are not consistent with the counseling records, discussed above, which repeatedly noted unremarkable mental status examination findings, stability in the claimant's condition, and his report of improvement.  These factors suggest that the limitations were based largely on the claimant's subjective reports.  In addition, the report was completed at the rest of the claimant's representative in anticipation of the claimant's disability hearing, a context that cannot be ignored.  Because the limitations are not adequately supported and are inconsistent with the record, they are not entitled to significant weight.

Tr. 35-36 (internal footnotes omitted).  Mr. Whitten notes that Ms. Martinache is considered an "other" source for purposes of the Social Security Act, but argues that the ALJ nonetheless erred in discounting her opinion "for the same unsound reasons he rejected the other opinions."  Dkt. 19 at 16.  Mr. Whitten also argues, more specifically, that the ALJ erred in rejecting Ms. Martinache's opinion "solely on the basis that it was sought by claimant's counsel."  Dkt. 19 at 16.

But counsel's procuring Ms. Martinache's statement was not the sole reason provided by the ALJ for rejecting the statement.  While that circumstance *alone* would not have constituted a legitimate basis for rejecting the opinions contained within the statement, the ALJ provided other valid reasons to discount Ms. Martinache's opinions.  *See Reddick v. Chater*, 157 F.3d 715, 726

REPORT AND RECOMMENDATION - 14

(9th Cir. 1998) ("We clarify here that, *in the absence of other evidence to undermine the credibility of a medical report*, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it.") (emphasis added).

Specifically, the ALJ noted that Ms. Martinache's statement was a checkbox form with no narrative explanation to support her checked boxes, and this is a germane reason to discount her opinion. *See Molina*, 674 F.3d at 1111 (ALJ may "'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'") (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). The ALJ also explained that Ms. Martinache's statement was undermined by Mr. Whitten's repeated unremarkable mental status examination findings, and the stability and improvement of his condition. As explained *supra*, Part III.B.1-3, these are germane reasons to discount Ms. Martinache's opinions. There is no indication in Ms. Martinache's form statement that she relied upon Mr. Whitten's subjective self-report, however, and thus the ALJ did not adequately support his presumption that Ms. Martinache's opinions should be discounted to the degree to which they relied upon Mr. Whitten's non-credible statements. But because the ALJ provided a number of other germane reasons to discount Ms. Martinache's opinions, he did not err in discounting Ms. Martinache's statement.

**C.     The ALJ Did Not Err in Discounting Ms. Greenman's Lay Testimony.**

The ALJ summarized the lay-witness statements provided by Diana Greenman, and explained why he did not assign significant weight to that evidence:

> I have considered lay witness evidence in assessing the claimant's functioning. Diana Greenman completed a Third Party Function Report in September 2009, when she stated that the claimant was easily confused and had difficulty concentrating. She stated that the claimant did not socialize aside from talking to his children on the phone and maybe on a one-on-one basis. Ms. Greenman stated that the claimant was depressed and distracted ([Tr. 206-13]). Ms. Greenman also issued a declaration in July 2011 in which she stated that the claimant did not sleep well and was up throughout the night. She said that the claimant had

REPORT AND RECOMMENDATION - 15

> difficulty being away from home.  She stated that she had witnessed the claimant have a panic attack and said that he had to go lie down through the panic attack from 30 minutes up to three hours.  Ms. Greenman said that the claimant was paranoid and did not trust people, and that he always made sure that the windows and doors were locked.  She said that the claimant was irritable, easily overwhelmed and frustrated, and had difficulty focusing on a task for any prolonged period of time.  Ms. Greenman stated that she believed the claimant would work if he were able to do so ([Tr. 235-37]).
>
> Ms. Greenman's statement is generally corroborative of the claimant's allegations; however, it is not given significant weight in assessing the claimant's residual functional capacity for several reasons.  First, the symptoms and limitations noted by Ms. Greenman are not reflected in the medical evidence other than by claimant's subjective reports.  Second, the record documents improvement in the claimant's condition with treatment and reflects consistently unremarkable mental status examination findings, which are not consistent with the confusion and concentration difficulties alleged.  Moreover, the claimant's document activities suggest greater functioning than alleged.  Notably, he rouses himself to appear wherever necessary to maintain his financial aid.  In addition, Ms. Greenman relied to some extent on the claimant's subjective reports and presentation, which are not consistent with the record considered as a whole.
>
> . . .
>
> Thus, while I have considered this lay testimony, I discount this lay testimony for the same reasons I find the claimant's testimony not credible to establish disability.

Tr. 36-37.  Though Mr. Whitten reiterates arguments regarding whether Ms. Greenman's testimony is inconsistent with medical evidence or Mr. Whitten's daily activities — arguments raised and rejected *supra*, Part III.A, and rejected again here for the same reasons — he also raises an additional argument in this section for the first time: that in rejecting Ms. Greenman's evidence, the ALJ erred by "fail[ing] to recognize the role and significance of lay testimony." Dkt. 19 at 21.  According to Mr. Whitten, lay witnesses "can provide competent evidence to substantiate medical opinions of record, or to show directly how an impairment affects the claimant's ability to work." *Id.*

Mr. Whitten's description of the value of lay testimony may be correct, but he veers off

REPORT AND RECOMMENDATION - 16

course when attempting to apply the cited law to the facts of this case.  As Mr. Whitten correctly notes, inconsistency with medical evidence is a germane reason to discredit lay testimony.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  Though Mr. Whitten somewhat circularly argues that in this case, "the medical evidence and Ms. [Greenman's[4]] testimony are consistent with the medical evidence," the Court previously explained *supra*, Part III.A-B, how the ALJ reasonably found substantial evidence in the medical record to be in fact inconsistent with Mr. Whitten's allegations (and Ms. Greenman's corroboration thereof) of disabling impairments.  This is a germane reason to discount Ms. Greenman's testimony.  Therefore, the Court rejects Mr. Whitten's assignment of error with regard to the ALJ's assessment of Ms. Greenman's evidence.

**D.     The ALJ Did Not Err at Step Five.**

The ALJ found Mr. Whitten unable to perform any of his past work, but went on at step five to find that there were jobs that exist in significant numbers that he can perform.  Tr. 39.  This finding was not based on any vocational expert testimony, but was instead based on the ALJ's consideration of the Medical-Vocational Guidelines ("the Grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2.  *Id.*  The Grids

> "consist of a matrix of [the claimant's residual functional capacity, age, work experience and education] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983).  When the grids match the claimant's qualifications, "the guidelines direct a conclusion as to whether work exists that the claimant could perform."  *Id.* at 462.  When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, *see* Soc. Sec. Ruling 83-14, 1983 WL 31254 (S.S.A.), or (2) rely on a vocational expert when the claimant has significant non-exertional limitations.  *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577 (9th Cir.

---

[4] The Court presumes that the Mr. Whitten's reference to "Ms. Brown's testimony" is a typo.

REPORT AND RECOMMENDATION - 17

1988).

*Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (internal parallel citations omitted).

Mr. Whitten contends that the ALJ erred in relying on the Grids in this case because Mr. Whitten's significant non-exertional limitations "eroded the occupational base contemplated by the Grids to such a great extent that they precluded all work[.]" Dkt. 19 at 23.  In the alternative, Mr. Whitten argues that the ALJ should have solicited the testimony of a vocational expert to determine the extent to which the occupational base was eroded.  *Id.*

Mr. Whitten's arguments in this section assume that the ALJ erred at earlier steps in the disability determination process: only if the ALJ had erred in finding that Mr. Whitten's impairments were not severe enough to preclude all work, and instead only mildly or moderately impaired his ability to work, would the ALJ have been precluded from relying on the Grids.  *See Hoopai*, 499 F.3d at 1077 ("We have not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation.")  In this case, the ALJ credited the state agency consultants, who are experts in Social Security disability evaluation (Social Security Ruling 96-6p, 1996 WL 374180 (Jul. 2, 1996)).  Those consultants found that none of Mr. Whitten's limitations were "marked"; in all categories of mental activities, they found Mr. Whitten to be either not significantly limited or only moderately limited.  *See* Tr. 349-52, 357.  Thus, though Mr. Whitten argues that this case is distinguishable from *Hoopai* on the basis that his impairments were more severe, the Court disagrees because Mr. Whitten has not established that the ALJ erred in finding him to be at most moderately limited.  Accordingly, the ALJ was not required to call a vocational expert to support his step-five findings, and Mr. Whitten has not shown that the ALJ erred at step five.

### IV.     CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **October 23, 2012.**  If no objections are filed, the matter will be ready for the Court's consideration on **October 26, 2012**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 9th day of October, 2012.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19